BALDWIN *et al. v.* STAMFORD MANUF'G CO.

(*Superior Court of New York City, General Term.* May 7, 1888.)

SHIPPING—CHARTER-PARTY—CONSTRUCTION—DISCHARGE OF CARGO.

A provision in a charter-party that "25 running days are to be allowed the said merchants (if the ship be not sooner dispatched) for loading the vessel at port of loading, and for the discharge with the usual quick dispatch," does not allow the merchant freighters 25 days for discharging, in addition to 25 days for loading, the cargo; and such freighters are liable for demurrage for the time they retain the vessel beyond the period required for the usual quick dispatch.

Appeal from judgment on report of referee.

Action by Austin P. Baldwin and others against the Stamford Manufacturing Company to recover demurrage for 10 days, at the rate of eight pounds sterling a day. There was a judgment for plaintiffs for $445.99, and defendant appeals.

Argued before SEDGWICK, C. J., and FREEDMAN and O'GORMAN, JJ.

*Wilcox, Adams & Macklin,* for appellant.      *Seward, Da Costa & Guthrie,* for respondents.

O'GORMAN, J. The action was brought by the assignee of the owner of a foreign ship to recover from the merchant freighters in New York demurrage for 10 days, at the rate of eight pounds sterling a day. The material facts, as found, are these: On November 4, 1884, the ship arrived in the port of New York. She was ready to discharge cargo on November 7th. The cargo was not completely discharged until November 24th. The charter-party contained this provision: "Twenty-five running days are to be allowed the said merchants (if the ship be not sooner dispatched) for loading the vessel at port of loading, and for the discharge with the usual quick dispatch." Defendant's contention, that the proper interpretation of that clause is that 25 days should be allowed for discharging, in addition to 25 days also allowed for loading, cannot be sustained. The only question is whether the vessel was discharged by the freighters in New York with such quick dispatch as is usual, under similar circumstances, in the port of New York. The referee found that the freighters failed to exercise such usual quick dispatch; that the time which would have been required and sufficient to discharge the ship was not more than seven working days and one-fourth of a day,—that is to say, from Friday, November 7th, to Saturday, November 15th; and that the ship was not in fact completely discharged until the afternoon of November 24th, being nine and three-fourths days longer than was allowed under the charter-party. The referee, in so finding, is sustained by sufficient evidence. The object and intent of provisions in charter-parties, such as that here in question, is to secure speedy release of the ship from her occupation in one voyage, so that she may be, as soon as possible, free to undertake another. This is in the spirit of the maxim of admiralty that "a ship is made to plow the sea, and not to rot by the wall." The judgment below is sustained and affirmed, with costs.

SEDGWICK, C. J., and FREEDMAN, J., concur